UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No. 1:23-cr-137-13 (CRC) |
| | : | |
| v. | : | |
| | : | |
| **ROBERT SHEFFIELD,** | : | |
| | : | |
| **Defendant.** | : | |

### UNITED STATES' MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the Interim United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing as to Defendant Robert Sheffield (hereafter, the "Defendant").[1]  For the reasons set forth below, the United States respectfully requests that the Court impose an aggregate sentence of 111 months of incarceration, to be followed by 60 months of supervised release.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Over the course of approximately eighteen months, the Defendant and his co-conspirators engaged in a scheme to rob multiple South Asian jewelry stores, across multiple states, of heavy gold jewelry.  This carefully coordinated conspiracy began in January 2022 and continued until August 2023, ending only when the Defendant and several of his co-conspirators were charged and arrested.  Before they were apprehended, however, the co-conspirators robbed at least eleven jewelry stores of millions of dollars in jewelry, terrorizing multiple victims and leaving behind a wake of destruction and financial loss.

For each robbery, multiple co-conspirators stormed the store in a show of force, wearing dark clothing, masks, and gloves to conceal their identities, with at least one co-conspirator armed

---

[1]  Sentencing is scheduled for July 2, 2025.

with a firearm to act as "crowd control" and ensure compliance from employees and customers. The co-conspirators then used hammers to smash the glass display cases, filling bags with gold jewelry and resulting in significant damage throughout the stores.  Most concerningly, in every single instance, the Defendant and his co-conspirators terrorized the store's owners, employees, and/or customers by engaging in an armed takeover of the store and then ransacking it before fleeing.

On or about April 25, 2023, a federal grand jury indicted two of the co-conspirators, Trevor Wright and William Hunter, on one count of Conspiracy to Interfere with Interstate Commerce by Robbery (hereinafter, "Hobbs Act Conspiracy"), in violation of 18 U.S.C. § 1951, in relation to an armed robbery of the Paradise Jewelry Store ("Paradise") [ECF No. 1].  On August 17, 2023, a federal grand jury returned a 19-count Superseding Indictment, charging the Defendant and his co-conspirators in connection with nine armed robberies in New Jersey, Pennsylvania, Florida, and Virginia, with substantial planning and coordination occurring in D.C. [ECF No. 10].  The Defendant specifically was charged in connection with the November 10, 2022 Baral Jewelers ("Baral") robbery in Harrisburg, Pennsylvania.

On March 12, 2024, a Second Superseding Indictment was filed, adding charges against some of the co-conspirators for two additional robberies, as well as charges related to the recovery of contraband from multiple residences [ECF No. 134].  Among the added robberies was the April 28, 2023 attempted robbery of Yasini Jewelers in Falls Church, Virginia, during which the store owner fired gunshots at the intruders, who returned gunfire.  At that juncture, the Defendant was charged with unlawful possession of ammunition, stemming from the recovery of 21 live rounds of 9mm ammunition within his residence on the date of his arrest, August 30, 2023.

On February 20, 2025, pursuant to a plea agreement [ECF No. 298], the Defendant pled

guilty to a Superseding Information, charging Conspiracy to Interfere with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951, and Possessing a Firearm in Furtherance of a Crime of Violence and Aiding and Abetting, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2. In pleading guilty, the Defendant admitted to his involvement in the Baral robbery and his role as the gunman during the April 28, 2023 attempted robbery of Yasini Jewelers. *See* Statement of Offense [ECF No. 299].

    i.    <u>*November 10, 2022 Armed Robbery of Baral Jewelers (Harrisburg, PA)*</u>

On November 10, 2022, at around 6:30 p.m., the Defendant and several co-conspirators, including Timothy Conrad, Franklin Hunter, William Hunter, and Andrew Smith, committed an armed robbery of Baral in Harrisburg, Pennsylvania, robbing the store of an estimated $1,000,000.00 in gold jewelry. Prior to the robbery, the Defendant and his co-conspirators traveled from D.C. to the store in two suspect vehicles. After arriving, at least two co-conspirators remained in the vehicles parked in front of the store to act as "getaway" drivers, while several others, including the Defendant, rushed into the store. Two armed co-conspirators remained in the front of Baral, a grocery area, subduing the employees and customers there as four others, including the Defendant, ran to the rear where the gold jewelry was housed.

As employees and customers in the front of the store cowered in terror, covering their faces or ears, a gunman stalked towards the cash register, holding the store owner at gunpoint and taking approximately $600 from the cash register. Meanwhile, one of the four suspects in the rear of the store used a firearm to coerce an employee to the ground as the Defendant and others smashed the glass display cases and shoveled gold jewelry into large bags. Screenshots from Baral surveillance video are depicted in Figures A and B below with the Defendant outlined in red:



*Figure A: Surveillance of November 10, 2022 Armed Robbery of Baral (rear of store)*



*Figure B: Surveillance of November 10, 2022 Armed Robbery of Baral (front of store)*

Eventually, the Defendant and his co-conspirators ran through the front grocery area, kicking over a box of produce before fleeing the scene in the two suspect vehicles.

A week later, on November 17, 2022, codefendant Franklin Hunter posted on his own

4

account the below image of the Defendant with cash.



*Figure C:  November 17, 2022 Instagram Post on @blufrank_*

And on November 30, 2022, Franklin Hunter posted an Instagram story of the Defendant purchasing a Rolex wristwatch with cash at a jewelry store in Prince George's Mall.  In the video posted to social media, the Defendant can be seen counting multiple 100-dollar bills before the camera pans over to the Rolex he is purchasing, along with a certificate showing an appraisal value for the watch of $11,500.00.

5

 

*Figures D: November 30, 2022 Instagram Story on @blufrank_*

ii. *April 28, 2023 Attempted Armed Robbery of Yasini Jewelers (Falls Church, VA)*

On April 28, 2023, the Defendant and at least five co-conspirators drove from Washington, D.C. to Yasini Jewelers, at 1120 W Broad Street E, Falls Church, Virginia (hereafter, "Yasini"). Notably, Yasini was a prior target of this conspiracy; indeed, it is the first store known to have been robbed by codefendant William Hunter, at the commencement of the charged conspiracy in January 2022, resulting in the theft of $300,000 to $400,000 in gold jewelry.

During this second attempt at victimizing Yasini, and after waiting in the suspect vehicle by the store for an opportune moment to attack, around 8:00 p.m., codefendant Franklin Hunter smashed the storefront window with a sledgehammer. Immediately, five masked suspects ran from the suspect vehicle into the store through the broken window. Among them was the

6

Defendant, who was armed with a loaded Glock 23, 40 caliber firearm.



*Figure E:  Screenshot from April 28, 2023 Surveillance Inside Yasini*

This time, having suffered substantial losses from the first robbery in January 2022, the Yasini store owner was prepared; he retrieved his own firearm from the rear of the store, which he discharged once.  The co-conspirators fled the store before taking any jewelry.  But—not content to simply flee empty-handed—the Defendant immediately fired at the store owner before running towards the broken window to exit.



*Figure F:  Yasini internal surveillance*

Before exiting the store, the Defendant turned around, gratuitously firing his gun towards the storeowner again. The Defendant then fled the store into the suspect vehicle, heading back to D.C. Although, thankfully, no one was struck or injured by gunfire, this incident reflects exactly what the coconspirators were willing to do to satisfy their greed, as well as the incredible risk their actions caused to the public and themselves.



*Figure G: Yasini Internal Surveillance Showing Defendant Firing Again*

On August 29, 2023, the day before the arrest operation in this matter, law enforcement observed a post on the Defendant's Instagram account, depicting the Defendant and codefendant Franklin Hunter driving together in a car, flaunting their luxury watches, and displaying a firearm in the passenger seat that Franklin Hunter occupied.

 

*Figures H: Screenshots of August 29, 2023 Instagram Story from the Defendant's Account*

The next day, on August 30, 2023, the Defendant, Franklin Hunter, and other codefendants were arrested and their residences searched. Law enforcement recovered the firearm the Defendant had discharged in Yasini just four months prior from Franklin Hunter's residence. They further recovered from the Defendant's own residence 21 live rounds of 9mm ammunition.



*Figure I: Images of Firearm Seized from Franklin Hunter's Residence on August 30, 2023*

## II.  LEGAL STANDARD

Pursuant to 18 U.S.C. § 3553(a), the Court shall impose a sentence that is sufficient, but not greater than necessary, to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and to "provide the

9

defendant with needed educational or vocational training." 18 U.S.C. § 3553(a)(2). In addition, the Court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" the types of sentences available, the Sentencing Guidelines; any pertinent policy statements; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims. *Id.* § 3553(a).

The listed factors in 18 U.S.C. § 3553(a) include the following:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;

2) The need for the sentence imposed –
    a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    b) To afford adequate deterrence to criminal conduct;
    c) To protect the public from further crimes of the defendant; and
    d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) The kinds of sentences available;

4) The kinds of sentence and the sentencing range established for –
    a) The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
        i) Issued by the Sentencing Commission . . . ; and
        ii) That . . . are in effect on the date the defendant is sentenced

5) Any pertinent policy statement –
    a) Issued by the Sentencing Commission . . . and
    b) That . . . is in effect on the date the defendant is sentenced

6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7) The need to provide restitution to any victims of the offense.

Procedurally, after calculating the applicable Guidelines range, the Court should next consider all the applicable factors set forth in 18 U.S.C. § 3553(a). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations

10

relevant to sentencing as articulated in Section 3553(a).  *Rita v. United States*, 127 S. Ct. 2456, 2463 (2007).

### III.   GUIDELINES CALCULATION

#### A.   Total Offense Level

With respect to Count One of the Superseding Information, the base offense level for a violation of 18 U.S.C. § 1951 is governed by U.S.S.G. § 2B3.1.  As detailed in the Final Presentence Report (the "PSR") [ECF No. 335] and the plea agreement [ECF No. 298], the offense level for Count One is 20, pursuant to U.S.S.G. § 2B3.1.  Pursuant to U.S.S.G. § 2B3.1(b)(7)(D), a three-level enhancement is applicable because the loss to Baral Jewelers exceeded $500,000.  After adjustments for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b), the final offense level for Count One is 20.

In the Defendant's Obligation and Response to the Presentence Report [ECF No. 325], he asserts he is entitled to a minor role adjustment under U.S.S.G. § 3B1.2(b), reducing his offense level by 2 to 18.  Not so.  The minor role adjustment is appropriately applied to defendants "substantially less culpable than the average participant" in the criminal activity.  *See* § 3B1.2, comment. (n.3(A)).  In assessing whether the adjustment applies, the Court considers the factors enumerated in Application Note 3(C), including:

> (i)   The degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii)  The degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) The degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

      (iv)      The nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and

      (v)      The degree to which the defendant stood to benefit from the criminal activity.

*Id.* at comment. (n.3(C)).

The Defendant contends—contrary to the Statement of Offense [ECF No. 299] he adopted under oath during the plea hearing—that he committed only one robbery, and he contrasted himself from codefendants who carried weapons during the robberies. *See* ECF No. 325, p. 2. He further claims that he neither controlled others nor played a decision-making role in the conspiracy. *See id.*

As detailed *infra* in Section IV, the Defendant's claims are without merit. Although he was only charged with commission of the Baral robbery, further investigation revealed his involvement in multiple robberies and his participation as a fully-fledged member of the conspiracy, including as the gunman who fired multiple shots at the victims during the April 2023 Yasini attempted robbery. What's more, the Defendant's statements on social media, detailed below and set forth in Figure J, reveal he may have recruited at least one coconspirator to participate in this robbery scheme. And as borne out in his and coconspirators' social media posts, the Defendant enjoyed the fruits of their ill-gotten gains from the conspiracy, which he proudly flaunted. The Defendant was closely associated with codefendant Franklin Hunter, who was among the more culpable actors within this scheme; it therefore strains credulity to suggest the Defendant exercised no control or influence within this conspiracy, much less that he was "substantially less culpable than the average participant" and therefore entitled to a minor role adjustment.

As to Count Two, the applicable guideline sentence for a violation of 18 U.S.C. § 924(c)(1)(A)(ii) is governed by U.S.S.G. § 2K2.4(b).

### B.   Criminal History Category

The PSR writer calculates the Defendant to have six criminal history points, which places him in Criminal History Category III.  *See* PSR ¶ 118.

### C.   Sentencing Guideline Range

For Count One, a final offense level of 20 and Criminal History Category III results in a guidelines range of 41-51 months of incarceration, 1 to 3 years of supervised release, and a fine range of $15,000 to $150,000.  *See* U.S.S.G. §§ 5D1.2(a)(2) and 5E1.2(c)(3).  Pursuant to U.S.S.G. § 2K2.4(b), the guidelines range for Count Two is the minimum term of imprisonment set by statute, here, 60 months of incarceration, which shall be imposed consecutively to the sentence imposed on Count One, and 2 to 5 years of supervised release.  As a result, the Defendant's aggregate sentencing range for Counts One and Two is 101 to 111 months of incarceration.

## IV.   ARGUMENT

As stated above, the United States respectfully requests the Court sentence the Defendant to a term of 111 months of incarceration, followed by 60 months of supervised release.  The United States respectfully submits that a sentence of 111 months is sufficient, but not greater than necessary, to serve the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a).

### 1.   The Nature, Circumstances, and Seriousness of the Offense

As the Court is well aware, the Defendant's participation in the armed robbery of Baral Jewelry took place within the context of a much larger conspiracy—a well-organized criminal scheme to ransack and rob primarily minority-owned establishments while armed with loaded

13

firearms. This conspiracy, involving at least fifteen co-conspirators with differing levels of involvement and playing different roles, resulted in significant harm to those victims—both financially and emotionally.

What's more, contrary to the Defendant's characterization, his involvement in this conspiracy was neither minimal nor confined to just the Baral robbery. He committed multiple robberies and, on at least one occasion, he was the gunman who wielded a loaded firearm against the victims. Moreover, it appears that he recruited at least one co-conspirator, Joshua Matthews, who unfortunately died as a result of his involvement in the conspiracy as described below.

Specifically, within the Defendant's Instagram message, dated just two days after the events that led to Matthews' death, featured in Figure J below, the Defendant referenced having committed three robberies, or "moves," by December 2022, resulting in approximately $70,000 in personal gains per robbery. In the same message, he admitted to connecting Matthews, a/k/a "Knucklehead" or "Knucke," to the Defendant's co-conspirators so Matthews could join the scheme and similarly steal exorbitant amounts of money in so little time. Unfortunately, the expense of joining this scheme was Matthews' own life.

> **Author** da_reallifaa (Instagram: 12400397687)
> **Sent** 2022-12-24 14:53:03 UTC
> **Body** He was so down bout not going to baby josh party with y'all I gave him some money and the money for his head phones but you kno knuke he want his own he told me everything I just did for my baby mother he want to do for you so I brung him around the Niggas we was going on move's getting 70k for 1 min I did it 3 times the Nigga cut me out when I introduced him to knuke and moe moe I told him these my brothers and they fucked up I got into it wit the Nigga I didn't want to do nuffin to him
>
> **Author** da_reallifaa (Instagram: 12400397687)
> **Sent** 2022-12-24 14:55:19 UTC
> **Body** Because I didn't want to fuck up knuke and them money so they went and this happened I feel like it's my fault I should've never listened to knuke they crash and leave my brother I don't care I'm getting you his money no matter what I promise you that!!🙏🙏

*Figure J: Defendant's Instagram Message on December 24, 2022*

As evinced by messages extracted from the Defendant's cellphone, the Defendant had initially planned to join his co-conspirators, including Matthews, in robbing Chintamani's Jewelers on December 22, 2022, in Franklin Park, New Jersey.



*Figure K: Screenshot from Defendant's Phone Extraction. His Messages are in Green.*

Ultimately, the Defendant did not join his accomplices for that specific robbery, which tragically resulted in a car accident during the flight from the store, killing Matthews, a/k/a "Knucklehead" or "Knucke." Undaunted, though, just four months after Matthews' death, the Defendant committed the Yasini attempted armed robbery on April 28, 2023, culminating in an exchange of gunfire between the storeowner and the Defendant, depicted *supra* in Figures F and G.

At no point was the Defendant an unwitting or hapless participant in this conspiracy. Indeed, as evinced in Figure L, the Defendant's Instagram message to his child's mother, the Defendant fully appreciated the risks and dangers accompanying his violent conduct, but he

15

nevertheless prioritized his avarice at all costs.

> **Author** da_reallifaa (Instagram: 12400397687)
> **Sent** 2022-11-12 01:52:20 UTC
> **Body** I'm out here taking real chance getting killed or locked up for the rest of my life for us to do whatever we want to but whole time deep down u want me without u really my hater and they always say your BM or girlfriend is your biggest hater

*Figure L: Screenshot of the Defendant's Message Sent from his Instagram Account*

The Defendant's indifference to endangering others for his own gain, borne out by both his continued involvement after the tragic death of Matthews' and his willingness to open fire during the April 2023 attempted robbery of Yasini, informs the United States' recommendation for a sentence at the top of the Defendant's applicable guidelines range.

**2.    The Defendant's History and Characteristics**

Although the Defendant minimizes his criminal conduct in an apparent attempt to obtain a more favorable sentence, the United States still credits the Defendant for accepting responsibility by pleading guilty.

The Defendant's extensive criminal history, however, cannot be overlooked and further supports the United States' request for 111 months' incarceration. He has multiple prior convictions, including for violent crimes involving analogous conduct, none of which sufficiently deterred him from his involvement in the instant robbery conspiracy. Of note, in 2011, following his guilty plea in D.C. Superior Court case number 2011 CF3 4704, the Defendant was sentenced to five years' imprisonment for an armed robbery involving use of a firearm. *See* PSR at 19-20. Not only was he wholly undeterred, it appears that his behavior only escalated – notwithstanding his conviction – given his subsequent involvement in this organized, large scale conspiracy.

According to the factual proffer filed in that case, the Defendant and an accomplice robbed

16

two victims at gunpoint of their valuables. *See id.* When a witness exited his nearby residence and observed what was happening, the Defendant pointed his gun at the witness, ordering him to return to his house. *See id.* Despite serving a significant period of incarceration for that offense, the Defendant could not abide by court conditions. *See id.* His supervision was revoked, and in May 2018, he served an additional seven months of confinement. *See id.* He then was convicted of illegal possession of a firearm, for which he faced more jail time. Overall, the Defendant's criminal history makes clear that he is a danger to the community and that he is on a trajectory that could end in tragedy, not only for members of the community but also for himself.

### 3. The Need to Promote Respect for the Law and Deterrence

The sentence should reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence, and provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2). The United States respectfully submits there is a significant need to deter the calculated and violent conduct in this case, both for this Defendant and for others. As the United States has previously noted with respect to his co-conspirators, it is important for both the Defendant and others in the community to appreciate that, in the end, engaging in crime and violence does not pay, that their actions have consequences, and that the severity of those consequences render such schemes unworthwhile. Given this Defendant's criminal history and his concerning conduct, the message of deterrence is especially important. As a result, the United States respectfully submits that, under these facts, a significant term of imprisonment and a sentence within the applicable guidelines range is both appropriate and necessary.

A prison sentence of 111 months is the best measure of deterrence available to the Court. Such a sentence accomplishes the aims of § 3553(a)(2) in both a general and particularized manner. Such a sentence would reflect both the seriousness and dangerousness of the Defendant's conduct

in this case, and also promote respect for the law and the safety of the community by serving as a deterrent to brazen and violent conduct such as that perpetrated by the Defendant and his co-conspirators.

### 4. Other Factors

The recommended sentence of 111 months will also ensure consistency with the sentences thus far imposed against the codefendants. Indeed, Davon Johnson—the only codefendant with Criminal History Category III, who pleaded guilty to commission of one robbery—was similarly sentenced to 111 months' incarceration on November 20, 2024.

Moreover, the United States' recommended sentence is justified to protect the public from the Defendant, who carried out his violent conduct, not over the course of days or even weeks, but over an extended period of time. It would give the Defendant ample time to pursue further educational and vocational training and participate in other programs, such as grief counseling, that will hopefully stop his trend towards recidivism in its tracks. The recommended sentence also appropriately reflects that the Defendant's encounters with the criminal justice system have, to date, not adequately deterred him from engaging in the conduct to which he ultimately pleaded guilty in the present case.

## V. CONCLUSION

For the foregoing reasons, the United States recommends that the Court sentence the Defendant to an aggregate sentence of 111 months of imprisonment, followed by a term of 60 months of supervised release. Such a sentence serves the interests of justice and appropriately balances the sentencing factors articulated under 18 U.S.C. § 3553(a).

Respectfully submitted,

JEANINE FERRIS PIRRO
INTERIM UNITED STATES ATTORNEY

By:     */s/ Sitara Witanachchi*
SITARA WITANACHCHI
D.C. Bar No. 1023007
ANDREA DUVALL
AR Bar No. 2013114
Assistant United States Attorneys
U.S. Attorney's Office
Violent Crime and Narcotics Trafficking Offenses
601 D Street, NW
Washington, D.C. 20530

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2025, a copy of the United States' Sentencing Memorandum was submitted via CM/ECF, which will transmit to counsel to the Defendant.

*/s/ Sitara Witanachchi*
Assistant U.S. Attorney